## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SERENA MILDNER**,

     Plaintiff,

v.

**HFE 5 LLC;**
**LEFTY'S VENTURES, LLC;**
**LEFTY'S HOLDINGS, LLC;**
**and HUSSEIN 'SAM' BERRY,**

     Defendants.

Civil Action No. _____
Hon. _____

---

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
MICHAEL W. LAURILA (P86937)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com
mlaurila@greatMIattorneys.com

_____/

## COMPLAINT & JURY DEMAND

    NOW COMES Plaintiff, SERENA MILDNER, by and through her attorneys, GIROUX PAPPAS TRIAL ATTORNEYS, P.C., and for her Complaint against the above-named Defendants, states as follows:

## PARTIES

1.     At all relevant times, Plaintiff Serena Mildner was a resident of the City of Hazel Park, County of Oakland, State of Michigan and at all relevant times, worked at Lefty's Cheesesteak at 1335 West 8 Mile in Detroit, Michigan.

2.     Defendant HFE 5 LLC, is a domestic limited liability company located in the City of Southfield, County of Oakland, State of Michigan and also operates a Lefty's Cheesesteak franchise at 1335 West 8 Mile Road, Detroit, MI, which was where Plaintiff worked.

3.     Defendant Lefty's Ventures, LLC is a domestic limited liability company located in Southfield, Michigan, has the same management/ownership as HFE 5 LLC, operates various Lefty's Cheesesteak franchise across Michigan and the United States and is believed to be a co-employer and/or joint employer of Plaintiff.

4.     Defendant Lefty's Holdings, LLC is a domestic limited liability company located in Southfield, Michigan, has the same management/ownership as HFE 5 LLC, operates various Lefty's Cheesesteak franchise across Michigan and the United States and is believed to be a co-employer and/or joint employer of Plaintiff.

5.     Defendant Hussein "Sam" Berry is the owner of these entities, is a citizen of the United States and resides in Michigan, and as the owner of the

specific Lefty's where Plaintiff worked, had overall responsibility for the terms of Plaintiff's employment, hiring/firing decisions, wage payment decisions, including the decision to pay (or not pay) employees overtime wages.

6.      Defendants, collectively, were an "enterprise engaged in commerce or in the production of goods for commerce" as they had employees engaged in commerce or in the production of goods for commerce, they have businesses all over the country and import food products from across the Country, and had a gross annual sales well exceeding $1,000,000, meaning they are "enterprise[s] whose annual gross volume of sales made or business done is not less than $500,000", making Defendants a covered enterprise under 29 U.S.C. 29 U.S.C. § 203(s)(1)(A).

7.      Defendant Berry is an "employer" pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203(d) given his specific role in dictating Plaintiff's terms of employment, including the payment of wages and overtime wages, and also he is an "employer" under the Michigan Whistleblowers' Protection Act, M.C.L 15.361(b) given he is an agent and owner of these involved entities.

8.      At all times material and relevant hereto, Defendants, collectively and under theories of a theory of joint employers, were Plaintiff's employer, who was a covered employee pursuant to 29 U.S.C. § 203(e).

3

## JURISDICTION AND VENUE

9.    This cause of action arises out of violations of the overtime pay provisions and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a) & 216(b), the Michigan Workforce Opportunity Wage Act, MCL 408.414a, and a violation of Michigan's Public Policy Wrongful Discharge.

10.    This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331 and pendent jurisdiction over Plaintiff's state law claims given they are similar in nature to the federal claims.

11.    The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

12.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Wayne and Defendants have its place of business and transacts in Wayne and Oakland County, along with all over the state.

## COMMON FACTUAL ALLEGATIONS

13.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 12, as if fully set forth herein.

14.    Plaintiff was employed by Defendants—while she was originally paid for HFE 5, LLC and Defendant Berry, it remains unclear the extent which all

Defendants were involved in the operations and employment decisions regarding Plaintiff's employment—however it is believed that Lefty's Ventures and Lefty's Holdings played a significant role in the financial and management aspect of the restaurants under the banner of HFE 5, LLC, to the extent they were a joint enterprise.

15.     Plaintiff (and her cousin, Ashley Wilmoth[1]) were hired by Defendants at the above-referenced Lefty's Cheesesteak on or around September of 2022.

16.     It is upon information and belief that in December of 2022 and/or January of 2023, Defendants purchased back this franchise from a previous owner, and thus, all Defendants became the owner and subject to liability.

17.     While Plaintiff was deemed a manager, she was paid an hourly wage of $16/hour when hired (and she received subsequent raises) and she worked anywhere between 50-70 hours/week in this position, and her pay would vary week-to-week depending on her hours worked.

18.     From the date she was hired, she was not paid overtime compensation and for most of her time working for Defendants, she was paid in cash by Defendant Berry.

---

[1] Ashley Wilmoth has a pending claim against these Defendants involving similar claims and similar statutory violations in this Court, Case No. 23:cv-11430.

19.     In approximately June of 2023, Defendant Berry put Ms. Mildner on the payroll, but only for a portion of her hours and along with that, continued to pay her in cash as well; yet he did not pay her overtime wages.

20.     Defendants—specifically Defendant Berry, who dictated her pay and personally decided the manner in which she would be paid—would pay her weekly.

21.     In early June, the Department of Labor notified Berry that it was coming to this Lefty's—following Ms. Wilmoth's DOL complaint and her filing a lawsuit on June 15, 2023 involving unpaid overtime—for an inspection, and in response to this, Defendant Berry asked Ms. Mildner to modify the schedules showing how many hours employees were scheduled to work and actually worked.

22.     Due to Defendants' almost non-existent system for tracking hours and that Berry paid employees off the books, the final weekly schedule that was submitted to Berry was the sole basis showing how many hours each employee worked.

23.     Berry asked Ms. Mildner to modify the schedules in a manner that would make it appear as though no employee worked over 40 hours/week despite that many were in fact working in excess of 40 hours/week and would have been entitled to overtime pay.

24.     Ms. Mildner opposed Berry's request, and specifically told him she did not feel comfortable doing so given the purpose was to falsify records in anticipation of the Department of Labor visit.

25.     Around this same encounter, Ms. Mildner also inquired with Defendant Berry regarding whether she was entitled to overtime pay, to which he angrily told her no because he was not going to pay for it.

26.     When the DOL investigation began and after Ms. Wilmoth filed her suit on June 15, 2023, Defendant Berry became very hostile towards Ms. Mildner in the workplace—likely in part due to their familial relationship and Berry's suspicion of Ms. Mildner—and this hostility created an intimidating and fearful working environment.

27.     In approximately October of 2023, Defendant Berry ceased paying her via any sort of payroll check (i.e. documented wages) and strictly paid her in cash; cash payments that did not include overtime pay.

28.     As it pertains to the comingling of the parties here and who employed Ms. Mildner, Defendant Berry would have Plaintiff come to what is believed is Lefty's Holdings, LLC's corporate office in Southfield, and there he would give her cash for her hours worked.

29.     In the middle of November 2023, Ms. Mildner learned that another hourly employee at Lefty's was receiving overtime pay for his hours worked over

40 hours/week, and because she had previously inquired with Berry about this to no avail, she once again asked Defendant Berry why she was not getting overtime pay.

30.    Like his previous responses to Ms. Mildner, Berry became angry and hostile towards her and told her that he will not pay for her overtime wages.\

31.    After Ms. Mildner's opposition and inquiry into overtime pay in November, Berry became even more hostile and agitated towards her in the workplace, which resulted in increased scrutiny and hostility.

32.    In light of the ongoing hostility and increased scrutiny from Berry and his ongoing refusal to pay her overtime—both in the face of her multiple requests and also her knowledge that certain employees were getting paid overtime wages—Ms. Mildner felt forced to resign (constructive discharge) her employment on November 30, 2023.

## COUNT I – FLSA UNPAID OVERTIME – 29 U.S.C. § 206 - AS TO ALL DEFENDANTS

33.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 32, as if fully set forth herein.

34.    Defendants were an "enterprise engaged in commerce or in the production of goods for commerce" as it had "employees engaged in commerce or in the production of goods for commerce" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. §

203(s)(1)(A). As such, Defendants were a covered enterprise under the terms of the FLSA.

35.     Plaintiff was an individual employed by Defendants, and she was a covered "employee" pursuant to 29 U.S.C. § 203(e).

36.     Under the FLSA, 29 U.S.C. § 207(a)(2), unless an employee is exempt, "[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

37.     Almost every week Plaintiff worked for Defendants from the date Berry took over ownership, Plaintiff Mildner worked in excess of 40 hours/week—anywhere between 50-70 hours/week—but she was not compensated for any overtime hours, instead being paid her hourly wage for all hours in excess of 40 hours.

38.     Though Plaintiff had managerial duties, she was not an exempt employee as defined under the FLSA, 29 U.S.C. § 213, given she was solely paid an hourly wage, was not paid a salary and did not work a set amount of hours per week. See 29 C.F.R. § 541.600(a) ("To qualify as an exempt executive,

administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis…").

39.    By failing to pay Plaintiff at a rate not less than 1.5 times her regular hourly rate for hours that she worked in excess of 40 hours/week as required under the FLSA, Defendants have violated 29 U.S.C. § 206 and 207, and Plaintiff is entitled to damages and compensation set forth in 29 U.S.C. § 216(b).

40.    Defendants' violations of the FLSA were not in good faith within the meaning of 29 U.S.C. § 260—particularly given Defendant Berry's efforts to not place Plaintiff on the books, omit any hours she worked in excess of 40 hours/week from payroll records, and pay her in cash—which entitles Plaintiff to liquidated damages pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

(1) Compensatory damages for her unpaid overtime hours at a rate of one and one-half times her regular pay;

(2) Liquidated damages equal to the amount of compensatory damages awarded;

(3) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(4) Any other relief, equitable or legal, that appears just and appropriate at the time a judgment is rendered.

## COUNT II – FLSA RETALIATION – 29 U.S.C. § 215 - AS TO ALL DEFENDANTS

41.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 40, as if fully set forth herein.

42.     Under the FLSA, 29 U.S.C. § 215(a)(3), it is unlawful " to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding."

43.     FLSA protected activity under 215(a)(3) includes internal and/or informal complaints regarding pay, wages, and overtime compensation and only need be made on a good-faith basis.

44.     On multiple instances (as stated above) Plaintiff Mildner engaged in FLSA protected activity when she confronted and requested overtime pay from Defendant Berry for the hours she worked in excess of 40 hours/week and also when she opposed Berry's request of her to alter schedule records (i.e. the only proof of how many hours employees worked) in anticipation of the Department of Labor's on-site inspection.

45.    When Plaintiff Mildner would raise her entitlement to overtime pay, Defendant Berry became hostile towards her and resulted in increased scrutiny, including harassing her regarding her whereabouts and who she was speaking to.

46.    It is upon information and belief that Defendant Berry's hostility and increased scrutiny arose both from Plaintiff's requests for overtime and the ongoing DOL investigation.

47.    Upon information and belief, Defendant Berry suspected that Ms. Mildner was working with or involved with Ms. Wilmoth's pending claim, and this amounted to strange treatment of Ms. Mildner and a hostile working atmosphere.

48.    Defendant Berry would routinely berate and demean Ms. Mildner in front of the entire staff, and this led to a seriously intolerable working environment for Ms. Mildner.

49.    In addition to his hostility and demeaning conduct towards Ms. Mildner following her protected activities, when Berry commenced solely paying her cash from Lefty's Holdings, LLC, this created concern and stress for Plaintiff as she did not know the tax ramifications and/or if by accepting the money it was allowed.

50.    From the first time Ms. Mildner raised receiving overtime pay to the final time—in the middle of November of 2023—Defendant Berry's hostility, increased scrutiny, and abusive, demeaning actions towards Ms. Mildner and

Berry's suspicious efforts to avoid detection of failing to pay Ms. Mildner overtime resulted in fear of retaliation and a work environment riddled with hostility.

51.    At no point following Plaintiff's protected activity did Defendant Berry remedy the situation or make changes; quite oppositely, he commenced paying her in a manner that was even more suspicious and concerning all while refusing to pay her for lawfully-owed overtime wages.

52.    As a result of these unbearable working conditions that Berry—who was the sole decision maker—created for Plaintiff Mildner, she was forced to quit (constructive discharge) on November 30, 2023.

53.    The unbearable working conditions that Berry created were the result of a retaliatory animus towards Ms. Mildner based on her engaging in the above-referenced protected activity and her constructive discharge qualifies as an adverse employment action in violation of 29 U.S.C. § 215(a)(3).

54.    Defendants' violations of the FLSA were not in good faith within the meaning of 29 U.S.C. § 260, which entitles Plaintiff to liquidated damages pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

(1) Compensatory damages for past and future wages (future wages to the extent reinstatement is not possible) including overtime benefits she would have been entitled to;

(2) Compensatory damages for emotional and mental distress;

(3) Liquidated damages equal to the amount of compensatory damages awarded;

(4) Punitive damages;

(5) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(6) Any other "legal or equitable relief as may be appropriate to effectuate the purposes of § 215(a)(3) or § 218(d) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." § 216(b).

## COUNT III – VIOLATION OF THE MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT ("WOWA")— AS TO ALL DEFENDANTS

55.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 54, as if fully set forth herein.

56.    Defendants were a " a person, firm, or corporation, including the state and its political subdivisions, agencies, and instrumentalities, and a person acting

14

in the interest of the employer, who employs 2 or more employees at any 1 time within a calendar year" M.C.L. §408.412(d). As such, defendants were a covered enterprise under the terms of the Michigan Workforce Opportunity Wage Act.

57.     Plaintiff was "an individual not less than 16 years of age employed by an employer on the premises of the employer or at a fixed site designated by the employer...", and was an "employee" pursuant to M.C.L. §408.412(c).

58.     As Plaintiff was a non-exempt employee given she only received an hourly wage and worked anywhere between 50-70 hours/week during her employment with Defendants, under the Michigan Workforce Opportunity Wage Act, Defendants were required to pay Plaintiff "at a rate not less than 1-½ times" her hourly rate for the hours she worked in excess of 40 hours/week. See M.C.L. §408.414a.

59.     Defendants did not pay Plaintiff 1-½ times her regular hourly rate, in violation of the WOWA.

60.     Defendants also violated M.C.L. §408.479 by failing to keep, make and preserve accurate records of all the work by Plaintiff.

61.     Defendants' violation of the Michigan WOWA was willful and entitles Plaintiff to liquidated damages equal to twice the overtime wages that were due, pursuant to M.C.L. § 408.419.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

(1) Compensatory damages for unpaid overtime commissions;

(2) Liquidated damages;

(3) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(4) Any other "legal or equitable relief as may be appropriate" under Michigan law.

## COUNT IV– MICHIGAN PUBLIC POLICY WRONGFUL DISCHARGE CLAIM AS TO ALL DEFENDANTS

62.    Plaintiff hereby reasserts and re-alleges each and every allegation contained in paragraphs 1 through 60, as if fully set forth herein.

63.    Pursuant to Michigan law pertaining to public policy exceptions to an employee's at-will employment status, an employer cannot discharge and/or take adverse employment action(s) against an employee for the following reasons:

a. Where explicit legislative statements prohibit the discharge, discipline, or other adverse treatment of employees; and/or

b. Where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment; and/or

c. Where the reason for the discharge was the employee's failure or refusal to violate the law.

16

64.     At all times material and relevant, Plaintiff was an employee and Defendants were Plaintiff's employer, and Plaintiff was an at-will employee.

65.     Plaintiff engaged in public policy protected activity when she refused to violate the law when Berry asked her to alter documents in anticipation of the Department of Labor's on-site inspection and also when she made internal complaints to Defendant regarding the failure to pay her overtime wages.

66.     The WOWA, specifically M.C.L. § 408.421, prohibits retaliation, but does not provide a remedy and/or right of action for retaliation following internal overtime complaints.

67.     Plaintiff Mildner's internal complaints and opposition to violating the law encompassed Defendants' failure to pay her overtime wages in violation of the law and also Berry's request to falsify records of employees' hours worked for purposes of the Department of Labor investigation.

68.     The same decision-maker that was involved in the decision to unlawfully refuse to pay Plaintiff for overtime wages and seek Ms. Mildner to falsify records to cover up the ongoing unlawful failure to pay overtime (Defendant Berry), that Plaintiff reported this legal violation to and opposed his conduct to, was the sole decision maker involved in creating a hostile, unbearable working environment leading to Ms. Mildner's constructive discharge.

69.     Defendants' hostility, harassment and demeaning conduct towards Ms. Mildner following her repeated internal complaints (regarding both overtime and Defendant Berry's request to have her falsify records) was directly related to the same and created an offensive, unbearable working environment rife with hostility and fear; particularly a fear of retaliation.

70.     As a result of these unbearable working conditions that Berry—who was the sole decision maker—created for Plaintiff Mildner, she was forced to quit (constructive discharge) on November 30, 2023.

71.     As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein and pursuant to Michigan's public policy exception to at-will employment, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

72.     Pursuant to the public policy wrongful discharge rule, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount greatly exceeding $75,000, together with interest, costs, and attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

Respectfully submitted,

By: /s/ *Andrew J. Laurila*
    ROBERT M. GIROUX (P47966)
    ANDREW J. LAURILA (P78880)
    MICHAEL W. LAURILA (P86937)
    Giroux Pappas Trial Attorneys, P.C.
    Attorneys for Plaintiff
    28588 Northwestern Hwy., Ste. 100
    Southfield, MI 48034
    (248) 531-8665; Fax: (248) 308-5540
    rgiroux@greatMIattorneys.com
    alaurila@greatMIattorneys.com
Dated: January 18, 2024    mlaurila@greatMIattorneys.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SERENA MILDNER**,

     Plaintiff,                 Civil Action No. _____

                                  Hon. _____

v.

**HFE 5 LLC; LEFTY'S**
**VENTURES, LLC;**
**LEFTY'S HOLDINGS, LLC;**
**and HUSSEIN 'SAM' BERRY,**

     Defendants.

---

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
MICHAEL W. LAURILA (P86937)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com
mlaurila@greatMIattorneys.com

_____/

## **JURY DEMAND**

    **NOW COMES** Plaintiff, Serena Mildner, by and through her attorneys,

GIROUX PAPPAS TRIAL ATTORNEYS, P.C., and hereby demands a trial by jury

in the above stated cause of action.

Respectfully submitted,

By: /s/ *Andrew J. Laurila*
     ROBERT M. GIROUX (P47966)
     ANDREW J. LAURILA (P78880)
     MICHAEL W. LAURILA (P86937)
     Giroux Pappas Trial Attorneys, P.C.
     Attorneys for Plaintiff
     28588 Northwestern Hwy., Ste. 100
     Southfield, MI 48034
     (248) 531-8665; Fax: (248) 308-5540
     rgiroux@greatMIattorneys.com
     alaurila@greatMIattorneys.com
Dated: January 18, 2024     mlaurila@greatMIattorneys.com